### IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JEFFREY A. MARTIN, and JUANITA
FLEMING as Executrix of the Estate of
Arch Fleming,

               Plaintiff,

v.                                      CIVIL  ACTION  NO.  3:10-0144

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign corporation;
SHANNON CAZAD and ANGELA COOKE,

               Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs Jeffrey A. Martin and Juanita Fleming's motion to remand (Doc. #4).  For the reasons stated below, the motion is **DENIED.**

### Background

This case, originally filed on December 29, 2009, in the Circuit Court of Mason County, West Virginia, is a class action suit concerning underinsured motorist coverage.  Plaintiffs Jeffrey A. Martin and Juanita Fleming, Executrix of the Estate of Arch Fleming, assert claims against State Farm Mutual Automobile Insurance Company ("State Farm") and two named State Farm Agents, Shannon Cazad and Angela Cooke.  Plaintiff Martin and Plaintiff Fleming's decedent were injured in car accidents, in 2005 and 2009, respectively, where the damages incurred by each plaintiff greatly exceeded the liability coverage of the party at fault.  At the time of their respective accidents, both named plaintiffs were insured under automobile insurance policies issued by State Farm.  Each

policy carried liability and uninsured motorist coverage limits of $100,000 per person and $300,000 per occurrence.  Neither policy carried underinsured motorist coverage.  Consequently, State Farm did not provide underinsured motorist coverage to either plaintiff following their respective accidents (i.e., State Farm did not cover any portion of the difference between the plaintiffs' actual damages and the at-fault-party's liability coverage limits).

Plaintiffs filed suit, alleging that State Farm unlawfully denied them underinsured motorist coverage, because the company failed to meet its legal obligation to make a commercially reasonable offer of underinsured motorist coverage to each plaintiff, at the time their policies were issued.  As a result, Plaintiffs argue that their policies must be reformed to include underinsured motorist coverage up to the limits of the liability insurance provided in their respective policies; meaning Plaintiffs Martin and Fleming claim that State Farm is obligated to pay them $100,000, apiece, for underinsured motorist coverage benefits due to them in connection with their 2005 and 2009 car accidents.  Plaintiffs further claim that, in addition to having a legal duty to make a commercially reasonable offer of underinsured motorist coverage and failing to do so, State Farm, through its agents Shannon Cazad and Angela Cooke, acted unlawfully during the claims process.  Specifically, Plaintiffs allege that State Farm knew that the selection/rejection forms it used to make an offer of underinsured motorist coverage to Plaintiffs were defective and yet has refused (and continues to refuse) to reform the relevant policies and match the available liability and uninsured motorist coverage limits pursuant to *Bias v. Nationwide Mutual Insurance Company*, 365 S.E.2d 789 (W. Va. 1987).

Plaintiffs' specific claims are as follows.  In Count I, Plaintiffs seek a declaratory judgment providing that, because the forms used by State Farm to offer underinsured motorist coverage to its

insureds did not comply with West Virginia Code § 33-6-31d, State Farm failed to make commercially reasonable offers to each plaintiff and their policies must be reformed to carry underinsured motorist coverage in an amount equal to the respective policy's liability coverage limits.  In Count II, Plaintiffs allege a breach of contract claim, arguing State Farm breached its duty under Plaintiffs' policies when it refused their demands for the payment of underinsured motorist coverage, despite its legal obligation to reform the policies and offer such coverage.  In Count III, Plaintiffs allege bad faith, arguing that State Farm's refusal to pay Plaintiff's underinsured motorist coverage claims amounts to common-law bad faith as recognized in *Hayseeds v. State Farm Fire and Casualty Company*, 352 S.E.2d 73 (W. Va. 1986).  Finally, in Count IV, Plaintiffs allege multiple violations of the Unfair Trade Practices Act ("UTPA"), W.V. Code § 33-11-4, on the part of State Farm, Cazad, and Cooke.

Plaintiffs bring this suit on behalf of themselves and on behalf of other similarly situated policyholders as representatives of a class.  Plaintiffs identify and seek certification of a class and two sub-classes.  According to the Complaint, the Class is:

> All citizens of West Virginia who from January 1, 2000 to the present are or were insured under a State Farm Mutual Automobile Insurance Company motor vehicle insurance policy covering motor vehicles principally garaged in West Virginia which policy did not state in the declarations page underinsured motorist coverage with coverage limits at least equal to the liability limits stated in the policy declarations (hereinafter referred to as Class Policy). Excluded from the Class are any persons who are not members of one of the two subclasses defined below.  *Pls.' Compl.* (Doc. #1-1), at ¶ 88.

The Declaratory Sub-class is: "All Class members who are, as of the date of certification, a named insured under a Class Policy."  *Id.* at ¶ 89.  The Injury Sub-class is:

> All Class members who, from January 1, 2000, to the present were involved in a motor vehicle accident or incident who were injured by or suffered property damage by the acts of an underinsured motorist and who were denied underinsured motorist coverage benefits equal to the liability limits stated in the policy declarations. Excluded from this subclass are:

a.      Persons who settled a bodily injury claim where the tortfeasor's bodily injury liability limits were not "constructively exhausted."

b.      Persons who settled a property damage claim where the tortfeasor's property damage limits were not "constructively exhausted."

c.      Persons who obtained a judgment against a tortfeasor, which judgment was in an amount less than the available liability and/or stated underinsured motorist coverage limits. *Id.* at ¶ 90.

In the Complaint, Plaintiffs and the Class also seek certification of a defendant class, represented by Defendants Cazad and Cooke, consisting of all West Virginia resident State Farm adjusters who adjusted underinsured motorist claims of the Class during the class period, who are also citizens of the State of West Virginia. *Id.* at ¶ 91. Although they do not have information to identify the exact size of the Class or the Sub-classes, Plaintiffs allege that the total size of each exceeds one hundred persons. *Id.* at ¶ 92.

Defendants removed this action to this Court pursuant to 28 U.S.C. §1332(d), the Class Action Fairness Act ("CAFA"). *See* Doc. 1. On February 24, 2010, Plaintiffs filed the instant motion to remand, opposing removal on the grounds that: (1) Defendants have not proven the jurisdictional amount of $5,000,000 is satisfied, and (2) even in the case that the Court finds the jurisdictional amount satisfied, the case should be remanded because Plaintiffs' claims fall under the "local controversy" and/or the "home state" exceptions of CAFA. *See* 28 U.S.C. § 1332(d)(4). On March 10, 2010, Defendants filed a response in opposition to Plaintiffs' motion to remand. *See* Doc. 6. Plaintiffs declined to file any reply to Defendants' response.

4

### The Law

The federal district courts are courts of limited jurisdiction, "[t]hey possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005); *see also Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) (same). Therefore, removal jurisdiction is strictly construed, *Mulchahey v. Columbia Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994), and the party seeking removal has the burden of establishing federal jurisdiction. *Id*; *see also Strawn*, 530 F.3d at 296; *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 200 (4th Cir. 2008). "If federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*, 29 F.3d at 151.

CAFA provides: "The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which– (A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2). The number of members of all proposed plaintiff classes must be more than 100. 28 U.S.C. § 1332(d)(5)(B). Consistent with the general principles of removal jurisdiction, a party seeking removal under CAFA bears the burden of establishing federal jurisdiction. This includes proving that the amount in controversy exceeds the jurisdictional amount of $5,000,000. *See Strawn*, 530 F.3d at 298 ("[I]n removing a class action based on diversity jurisdiction ... the party seeking to invoke federal jurisdiction must allege it in his notice of removal and, when challenged, *demonstrate* the basis for federal jurisdiction.") (citing cases) (emphasis supplied); *see also Sayre v. Potts*, 32 F.Supp.2d 881, 883-84 (S.D. W.Va. 1999) (holding that the removing party bears the burden of proving that a plaintiff's claim exceeds the jurisdictional amount); *Landmark Corp. v. Apogee Coal Co.*, 945 F.Supp. 932, 935 (S.D. W.Va.

5

1996) (same).

Whether the jurisdictional threshold is satisfied is generally determined by reference to the amount specified in the plaintiff's complaint. *Wiggins v. North Am. Equitable Life Assurance Co.*, 644 F.2d 1014, 1016 (4th Cir. 1981); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938) ('[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal[.]"); *Lanier v. Norfolk Southern Corp.*, 256 Fed.App'x 629, 631 ("[I]t must be clear from the face of the complaint that the amount in controversy exceeds $5 million.") (citing *Wiggins*).  Where the complaint does not specify the amount in controversy, the removing party must prove the jurisdictional amount by a preponderance of the evidence.  *See, e.g., Bartinowski v. NVR, Inc.*, 307 Fed.App'x. 730 (4th Cir. 2009) (unpublished opinion) (employing a preponderance of the evidence test to determine amount in controversy); *McCoy v. Erie Ins. Co.,* 147 F.Supp.2d 481, 489 (S.D.W.Va. 2001) (same); *Whitney v. State Farm Mutual Automobile Insurance Company* No. 3:98-0241 (S.D.W.Va. June 29, 1998) (Chambers, J.) (same).

The grant of federal jurisdiction provided by CAFA is subject to several exceptions, including the so-called "local controversy" and "home state" exceptions.  28 U.S.C. § 1332(d)(4). The "local controversy" and "home state" exceptions are mandatory.  According to 28 U.S.C. § 1332(d)(4),

A district court shall decline to exercise jurisdiction under paragraph (2)–

(A)(i) over a class action in which–

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant–

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons; or

(B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.

By enacting the local controversy and home state exceptions, "Congress decided to quality [CAFA's] rule of minimal diversity ... for class actions that [are] essentially local in nature." *Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 677 (7th Cir. 2006). "These exceptions are designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Id.* at 683; *see also Brook v. UnitedHealth Group, Inc.,* 2007 WL 2827808 (S.D. N.Y. Sept. 27, 2007). They are meant "to keep purely local matters and issues of particular state concern in the state courts." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

Once a defendant has established federal jurisdiction under CAFA, the burden shifts back to the plaintiff to show that the local controversy or home state exception applies. *See, e.g., Kaufman v. Allstate N.J. Ins. Co.,* 561 F.3d 144, 153-54 (3rd Cir. 2009); *Serrano v. 180 Connect,*

*Inc.,* 478 F.3d 1018, 1024 (9th Cir. 2007); *Hart*, 457 F.3d at 680; *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164-65 (11th Cir. 2006).   This is consistent with the language of the statute, as well as with the general principles governing removal jurisdiction.   *See, e.g., Kaufman*, 561 F.3d at 154 ("[S]ince 1948 ... there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception.") (quoting *Breur v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 698 (2003)).

## Analysis

I.     *State Farm has established federal jurisdiction pursuant to CAFA*

Plaintiffs admit that there is minimal diversity.  They have alleged that the Class and relevant Sub-classes each contain more than 100 individuals, and no primary defendant is a State, State official or other governmental entity.   Accordingly, the only remaining hurdle to State Farm's satisfaction of federal jurisdiction under CAFA is the need to show that the amount in controversy exceeds the jurisdictional amount of $5,000,000.  *See* 28 U.S.C. §§ 1332(d)(2) & (d)(5).

In the Complaint, the named plaintiffs each seek $100,000 in underinsured motorist coverage benefits in connection with their respective car accidents.   Additionally, Plaintiffs claim that all of the proposed classes, including the Injury Sub-class, consist of more than 100 individuals.[1]

---

[1]Attached to its Notice of Removal, State Farm provided an affidavit from Sandra Tucker, a Systems Analyst in the Systems Department of State Farm.  In her affidavit, Ms. Tucker attests that a search she conducted indicates that the Class in this action (individuals with West Virginia addresses who owned State Farm automobile policies that were in effect during the period January 1, 2000 through the present, with underinsured motorist coverage policy limits that were less than bodily injury liability policy limits) is approximately 271,000.  *See Tucker Affidavit* (Doc. 1-2), at ¶ 5.  Although discovery would be required to confirm this, the existence of a Class of 271,000 individuals suggests that the Injury Sub-class relevant here (all Class members who, from January 1, 2000, to the present were involved in a car accident,

Therefore, State Farm seeks removal on the ground that, by alleging $100,000 in damages for each named plaintiff and purporting to represent a class of more than 100 injured persons, Plaintiffs have placed "an amount in controversy of $10,000,000, without even accounting for the value of the declaratory relief sought, punitive damages or attorneys' fees." *Def.'s Resp. in Opp'n* (Doc. 6), at 7.

Plaintiffs oppose this assertion. To the contrary, they contend that, because a plaintiff's damage award will be limited to the difference between $100,000 and any amount State Farm offered to pay that plaintiff for any underinsured motorist claim, State Farm has not provided sufficient evidence to show that the members of the Injury Sub-class will each be entitled to a $100,000 award. It is true that each individual damage award will be limited to the difference between a particular insured's bodily injury liability limits and any amount offered to settle that plaintiff's underinsured motorist claim. Nonetheless, the Court finds that State Farm has met its burden to demonstrate, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000.

Pursuant to CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs." 28 U.S.C. § 1332(d)(6). Thus, it is the combined value of the more than 100 Injury Sub-class members' claims and the Declaratory Sub-class members' claims that matters. *Strawn*, 530 F.3d at 299. Multiplying the individual damage amounts pled in the complaint by the number of persons in an alleged class is a reasonable method for determining the amount in

---

suffered injuries consistent with underinsured motorist coverage, and were denied benefits equal to the liability limits of their policy) is substantially larger than 100 individuals.

controversy.  *See Chavis v. Fid. Warranty Servs., Inc.*, 415 F.Supp.2d 620, 627 (D.S.C. 2006) (finding the amount in controversy requirement met by multiplying the individual damage amounts pled by the number of persons in the alleged class); *Kearns v. Ford Motor Co.*, 2005 WL 3967998, at *5-*6 (C.D. Cal. Nov. 21, 2005) (same); *Id.* at *6 ("[I]t seems clear that Congress intended aggregation to run across all defendants, in order to capture 'all matters in controversy.'").  Using the $100,000 damage award pled by each named plaintiff, State Farm has demonstrated that, with a class of just 100 persons, up to $10,000,000 is in controversy.  *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448-49 (7th Cir. 2005) ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties. That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will be zero) does not prevent removal."). This showing is sufficient to establish the jurisdictional threshold of $5,000,000.[2]

---

[2]The Fourth Circuit's decision in *Bartinowski v. NVR, Inc.*, 307 Fed.App'x. 730, is not to the contrary.  There, the Court held that the removing party's "estimate of the amount in controversy ... [was] fatally undermined by the wholly unsupported assumption on which its calculations ultimately rest – that Plaintiffs and class members will each claim to have worked an average of five hours overtime per week."  *Id.* at 735.  An assumption the Court found "highly speculative."  *Id.* at 736.  State Farm's allegations regarding the amount in controversy here do not require such speculation.  Conversely, State Farm's calculation is based upon the explicit demand for $100,000 made by each named plaintiff and Plaintiffs' assertion that each relevant classes contains more than 100 members.  Moreover, as State Farm notes in its response, it appears unlikely that the $100,000 demands referred to above will be substantially reduced by any amount of underinsured motorist coverage benefits offered by State Farm, because neither the named plaintiffs nor similarly situated class members' policies contain underinsured motorist coverage.

II.     *Plaintiffs have failed to establish that either the "local controversy" or "home state" exceptions apply*

Now that the Court has found that State Farm has established federal jurisdiction pursuant to CAFA, it must determine whether either the "local controversy" or "home state" exceptions apply. As noted, Plaintiffs have the burden to show that an express exception to federal subject matter jurisdiction is appropriate. *See, e.g., Breur,* 538 U.S. at 698. Still, Plaintiffs chose not to file a reply to Defendants' opposition to their motion to remand. Therefore, Plaintiffs provide little evidence or argument to support the application of the relevant exceptions. *See Pls.' Mot.* (Doc. 4). In light of their burden, which State Farm clearly identified in its memorandum in opposition, the Court construes Plaintiffs' decision not to file a reply to the response as a concession to federal jurisdiction. Nonetheless, because the local controversy and home state exceptions are mandatory, the Court will review them below.

## The Local Controversy Exception

The local controversy exception, pursuant to 28 U.S.C. § 1332(d)(4)(A), provides that a class action should be handled by a state court when: (1) more than two-thirds of the members of all proposed plaintiff classes are citizens of the State in which originally filed; (2) at least one defendant is a significant local defendant; (3) the principal injuries from the alleged conduct were incurred in the State in which originally filed; and (4) no other class action has been filed asserting the same or similar factual allegations against the same defendants within three years. Under the statute, a significant local defendant is a defendant: (a) "from whom significant relief is sought by members of the plaintiff class," 28 U.S.C. § 1332(d)(4)(A)(aa); (b) "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class," 28 U.S.C. § 1332(d)(4)(A)(bb); and (c) who is a citizen of the State in which originally filed. 28 U.S.C. § 1332(d)(4)(A)(cc).

11

Here, elements (1), (3) and (4) of the local controversy exception are, plainly, satisfied. Thus, the pertinent question to resolving the local controversy exception is whether any defendant qualifies as a significant local defendant. State Farm is a citizen of the State of Illinois for the purposes of diversity.[3] Therefore, the more precise question presented is whether any member of the defendant class of West Virginia resident insurance adjusters, represented by Cazad and Cooke, are significant local defendants – i.e., are they defendants from whom significant relief is sought, whose alleged conduct forms a significant basis of the claims asserted?

In West Virginia, a claim adjuster employed by an insurance company may be held personally liable for UTPA violations. Syl. Pt. 1, *Taylor v. Nationwide Mut. Ins. Co.*, 589 S.E.2d 55 (W. Va. 2003). Consequently, Plaintiffs argue that members of the plaintiff Injury Sub-class seek "significant relief" from Defendants Cazad and Cooke, as well as from the other members of the defendant class of West Virginia resident insurance adjusters. *Pls.' Mot.* (Doc. 4), at 6. The Court disagrees.

The Fourth Circuit has not inquired into the meaning of the "significant relief" provision of the local controversy exception to CAFA. This Court, therefore, looks to other federal courts for guidance in resolving the issue. First, the Court considers *Evans v. Walter Industries.* In *Evans*, the Eleventh Circuit addressed CAFA's "significant defendant test." 449 F.3d at 1166-68. According to *Evans*, significant relief is viewed relative to the overall relief sought. *Id.* at 1167 ("[A] class seeks 'significant relief' against a defendant when the relief sought against that defendant is a significant portion of the entire relief sought."); *see also Kearns v. Ford Motor Co.*, 2005 WL

---

[3]State Farm is domiciled in Illinois, with its principal place of business in Illinois. *Notice of Removal* (Doc. 1), at ¶ 11.

3967998 (C.D. Cal. Nov. 21, 2005) ("[R]elief must be measured with respect to that sought by the entire class."). The significant relief test, therefore, requires a comparative analysis. One that "includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment." *Id.* (quoting *Robinson v. Cheetah Transp.*, 2006 WL 468820, at *3 (W.D. La. Feb. 27, 2006)).

Plaintiffs have not submitted the information or evidence necessary to conduct the comparative analysis required under the significant relief test. They submit that the named plaintiffs are entitled to $100,000 in underinsured motorist coverage benefits. However, Plaintiffs have not provided any assessment of their UTPA claims; the value of the declaratory relief sought; or the value of the breach of contract and bad faith claims raised against State Farm. Therefore, the Court cannot measure the relief sought against any one West Virginia adjuster against the total relief sought, and "significant relief" cannot be shown. This finding is consistent with the U.S. District Court for the Central District of California's decision in *Kearns*, 2005 WL 3967998, at * 10 ("By that measure Claremont Ford, which sold cars to only a fraction of the class, would not satisfy this criterion."), as well as with CAFA's legislative history. *See* S.Rep. No. 109-14, at 40 (quoted in *Kearns*, 2005 WL 3967998, at * 10).[4]

Similarly, the "significant basis" provision of the local controversy exception is not satisfied

---

[4]The statute's Committee Report provides, in pertinent part: "[I]n a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria. He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole. Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself."

here. Once again, the Court looks to other federal courts for guidance in resolving the "significant

basis"question, because the Fourth Circuit has not addressed the issue.   The Court begins by

reviewing the Third Circuit's decision in *Kaufman v. Allstate New Jersey Insurance Company,* 561

F.3d 144.  In *Kaufman*, the Third Circuit held that the "significant basis" analysis focuses upon a

defendant's conduct. *Id.* at 155-56.  The question presented was whether that party's activities form

a "significant basis" for the claims asserted. *Id.*  A finding of significance "does not require that the

local defendant's conduct form a basis of *each* claim asserted." *Id.* at 155 (emphasis in original).

However, it does require that there be "at least one local defendant whose alleged conduct forms a

significant basis for *all* the claims asserted in the action." *Id.* (emphasis supplied).

     In *Kaufman*, the circuit court made it clear that determining whether a party's conduct

satisfies the significant basis test is not a pure numbers game.  The question is not simply what

percentage of the relevant insurance market is held by a certain insurance company. *Id.* at 157.

Rather, the analysis "calls for comparing the local defendant's alleged conduct to the alleged

conduct of all the Defendants." *Id.* at 156.  Consequently, the Third Circuit provided a set of factors

that may inform a district court's comparison.  The non-exhaustive list includes: (1) the relative

importance of each of the claims to the action; (2) the nature of the claims and issues raised against

the local defendant; (3) the nature of the claims and issues raised against all defendants; (4) the

number of claims that rely on the local defendant's alleged conduct; (5) the number of claims

asserted; (6) the identity of the defendants; (7) whether the defendants are related; (8) the number

of members of the putative classes asserting claims that rely on the local defendant's alleged

conduct; and (9) the approximate number of members in the putative classes.[5]  *Kaufman*, 561 F.3d at 157 n. 3.

The fact-specific inquiry suggested in *Kaufman* is consistent with CAFA's legislative history.  *See* S.Rep. 109-14, at 40 ("Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted.  At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company.") (quoted in *Kearns*, 2005 WL 3967998, at * 10).  Additionally, it is consistent with the practices of other federal courts.  *See Evans*, 449 F.3d at 1167-68 (conducting a fact-specific analysis to determine the relative significance of various polluters' roles in an incidence of environmental pollution); *Kearns*, 2005 WL 3967998, at * 10 ("While Kearns is likely correct that the conduct of dealers as a *group* forms a significant basis for the claims, this is not true of any single dealer like Claremont Ford.  Its involvement is no different from that to the imagined insurance agent in the Committee Report, who presumably markets the program to clients, accepts and processes their applications, and handles billing.  It is Ford, like the insurance company, that promulgates and oversees the overall fraud.").

Here, Plaintiffs provide no information or evidence to conduct a comparative inquiry.  Therefore, it cannot show that any West Virginia adjuster's conduct formed a significant basis for all the claims asserted and the local controversy exception does not, therefore, apply.[6]

------

[5]For a case applying these factors, *see Kaufman v. Allstate Ins. Co.*, 2010 WL 2674130 (D.N.J. June 30, 2010).

[6]The Court notes that several of the cases that conduct the comparative analysis required under the "significant relief" and "significant basis" provisions allow for discovery on the issue, prior to the court's decision on a motion to remand.  However, Plaintiffs have neither replied to State Farm's response in opposition, nor requested discovery to prove the "significant relief" or "significant basis" provisions.  As a result, the Court finds it appropriate to resolve the motion, without discovery, according to the record as currently available.

### The Home State Exception

The "home state" exception provides that a district court shall decline to exercise jurisdiction over a class action in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Two-thirds or more of the members of all proposed plaintiff classes are citizens of West Virginia. Therefore, the question raised by the "home state" exception is whether "the primary defendants" are also West Virginians.

"The term 'primary defendants' has no clear, unambiguous meaning and is not an established term of art." *Kearns*, 2005 WL 3967998, at *7. In *Kearns*, the U.S. District Court for the Central District of California held that "primary defendants" were not "those with the deepest pockets or those with the greatest culpability," but rather "a 'primary defendant' is any with direct liability to the plaintiffs." *Id.* In *Brook*, the U.S. District Court for the Southern District of New York also recognized the ambiguity of the term, finding that "[i]t has been held that a primary defendant is one: (1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action." 2007 WL 2827808, at *5 (citing cases); *see also Cooper v. R.J. Reynolds Tobacco Co.*, 586 F.Supp.2d 1312, 1318 (M.D. Fla. 2008) (same).

Under any of these definitions, State Farm is a "primary defendant." Consequently, because State Farm is a citizen of Illinois, Plaintiffs cannot establish the 28 U.S.C. § 1332(d)(4)(B), "home state," exception. *See* 28 U.S.C. § 1332(d)(4)(B) (requiring that "*the* primary defendants" be citizens of the State in which originally filed) (emphasis supplied); *Cooper*, 586 F.Supp.2d at 1318

16

("That exception fails here because the 'primary defendants' are not *all* citizens of the [State in which originally filed].") (emphasis supplied); *Kearns*, 2005 WL 3967998, at *8 (same); *Brook*, 2007 WL 2827808, at *6 ("The plain language of the home state controversy section demonstrates that Congress intended that the State citizen requirement pertain to *all* primary defendants.") (emphasis supplied).

### Conclusion

State Farm established subject matter jurisdiction pursuant to CAFA. Therefore, because Plaintiffs cannot show that any of the exception to this jurisdiction applies, the motion to remand is **DENIED.** Pursuant to the Court's earlier Order, this action was stayed, in its entirety, pending resolution of the motion to remand. *See* Doc. 18. The stay is now **ORDERED LIFTED** and the case **ORDERED** to proceed. Accordingly, Plaintiffs are **ORDERED** to **FILE** any response to State Farm's pending motion to dismiss within **14 days,** or on or before **August 26, 2010.** Any reply to Plaintiffs' response shall be filed within **7 days** of the response's filing. Finally, the Court will enter a new **ORDER AND NOTICE** pursuant to Local Rule of Civil Procedure 16.1, shortly.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.


ENTER:        August 18, 2010


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE


17