**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JEFFREY A. MARTIN; JUANITA FLEMING, as Executrix of the Estate of Arch Fleming; and BARBARA GANDEE, both individually and on behalf of others similarly situated,**

**Plaintiffs,**

**v.** **Case No.: 3:10-cv-0144**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign Corporation; and SHANNON CAZAD,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' Motion for Determination of Privilege Status of March 2, 2009 Letter Produced by Defendant State Farm Mutual Automobile Insurance Company in Response to Plaintiff's Discovery Requests (Docket No. 101). Concurrent with the Motion, plaintiffs filed a Motion to Place Document Under Seal (Docket No. 100) and attached a copy of the document at issue, sealed in an envelope, for the Court's review. Defendant State Farm Mutual Automobile Insurance Company ("State Farm") has filed a Memorandum in Response to plaintiffs' Motion (Docket No. 113), and plaintiffs have filed a Reply Memorandum (Docket No. 115). Therefore, this matter is properly before the Court.

## I. Relevant Facts

This case involves alleged breaches of West Virginia law related to State Farm's obligation to offer underinsured motorists coverage ("UIM") in a commercially reasonable manner. In addition, plaintiffs assert claims of breach of contract, bad faith, and violations of the West Virginia Unfair Trade Practices Act against the defendants.

On January 31, 2011, State Farm supplied plaintiffs with over 670 pages of records in response to a Request for Production of Documents. (Docket No. 113 at 2). At the same time, State Farm served plaintiffs with privilege logs, identifying documents or portions of documents that were withheld subject to a privilege or other claimed protection. Included in the documents produced was a letter dated March 2, 2009 authored by defendant Shannon Cazad, an employee of State Farm, and directed to Sabrena Gillis, a lawyer retained by State Farm to provide legal services and opinions pertaining to the subject matter of the instant case ("letter"). The letter was not identified as a privileged document on any of the privilege logs. (Docket No. 101 at 3-4). This letter requested an opinion from Ms. Gillis on an essential matter of dispute in the case and confirmed her retention to defend State Farm in the pending litigation.

On February 10, 2011, plaintiffs took the deposition of Shannon Cazad. During the course of the deposition, plaintiffs' counsel produced the letter, marked it as an exhibit, and asked questions of Mr. Cazad about the letter, all without objection from State Farm. (*Id*. at 4). Five days later, on February 15, 2011, plaintiffs' counsel wrote to State Farm's counsel regarding several outstanding discovery issues. In this correspondence, plaintiffs asserted that State Farm had

waived any attorney-client privilege attached to the letter, and to the subject matter addressed in the letter, and requested State Farm to surrender all withheld documents "which are based upon the application of that privilege to communications with [Gillis] or notes reflecting the content of such communications." (*Id.* at 5). Upon receipt of the correspondence, State Farm promptly responded, asserting that the letter was privileged as a confidential attorney-client communication, contending that it had been inadvertently produced, and demanding that it be returned, sequestered, or destroyed pursuant to Fed. R. Civ. P. 26(b)(5)(B). (Docket No. 101-1 at 43-44). At the same time, State Farm argued that "even if State Farm could be deemed to have purposefully produced the document, it could be considered a non-privileged document and, therefore, no waiver of the attorney-client privilege occurred." (*Id.*)

In view of State Farm's position, plaintiffs agreed to sequester the letter pending a determination from the Court regarding the applicability of the attorney-client privilege and the issue of waiver. Plaintiffs reiterated their belief that State Farm had waived its right to make a claw-back request, because it failed to object to the use of the letter at Mr. Cazad's deposition and delayed asserting the attorney-client privilege until after plaintiffs had alleged a subject matter waiver and requested production of all undisclosed information relating to the subject matter of the letter.

## II. <u>Contentions of the Parties</u>

Plaintiffs assert that the letter constitutes a confidential communication between attorney and client; thereby, making it subject to a claim of attorney-client privilege. Plaintiffs argue that, as with any privilege, the privilege holder

could waive the protection attendant to the communication by voluntarily disclosing it. As such, plaintiffs contend that State Farm voluntarily waived the privilege attached to the letter by not including the letter on the privilege logs, by allowing it to be marked as an exhibit at the deposition of Mr. Cazad, and by permitting Mr. Cazad to testify regarding the contents of the letter. Plaintiffs emphasize that State Farm made no effort to retrieve the letter or assert the privilege until after plaintiffs requested production of undisclosed documents related to the subject matter of the letter. According to plaintiffs, inasmuch as the attorney-client privilege was waived in regard to the letter, State Farm likewise waived its privilege to the subject matter addressed in the letter. (See Docket No. 101).

To the contrary, State Farm presents three alternative arguments. First, State Farm asserts that the letter is not a confidential attorney-client communication, because it does not contain the substance of Ms. Gillis' legal opinions or advice. Accordingly, State Farm's production of the letter did not waive any attorney-client privilege that might attach to undisclosed information related to the subject matter addressed in the letter. Second, State Farm argues that even if the letter is a privileged communication, State Farm did not waive the privilege, because (1) the disclosure of the letter was inadvertent; (2) State Farm took reasonable precautions to avoid inadvertent disclosure; and (3) State Farm acted promptly to assert the privilege and retrieve the letter once it became aware of the inadvertent disclosure. Finally, State Farm contends that even if the letter is privileged and disclosure was not inadvertent, State Farm did not intend to make a subject matter waiver; consequently, based upon FRE 502(a), plaintiffs are not

entitled to obtain related undisclosed information.

## III. Applicable Law

Federal Rule of Evidence 501 states the general rule for matters of privilege in a federal court proceeding, providing in relevant part, "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law." The substantive claims and defenses in this civil action are matters of State law; accordingly, the question of whether the letter is privileged as a confidential attorney-client communication is governed by West Virginia law.

Conversely, issues of whether the attorney-client privilege was waived by disclosure, as well as the extent of the waiver, are matters of federal law. FRE 502(f); *See, also, Seyler v. T-Systems North America, Inc.*, _F. Supp. 2d_, 2011 WL 196920 *2 (S.D.N.Y.)("Unlike the scope of the privilege, the waiver question is governed by Federal Rule of Evidence 502(a), which applies when a 'disclosure is made in a Federal Proceeding"). Federal Rule of Evidence 502(a) provides that when a disclosure is made and an attorney-client privilege or work product protection is waived, the waiver extends to undisclosed information or communications *only if* (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together. One exception to this rule is when a disclosure is made inadvertently. In that case, the disclosure does not operate as a waiver of the privilege attached to the communication and, understandably, never results in a subject matter waiver, so long as the factual

circumstances surrounding the disclosure correspond with the conditions outlined in Federal Rule of Evidence 502(b).

## IV. Analysis

The initial question is whether the letter constitutes a confidential attorney-client communication to which a privilege attaches. Typically, the person asserting the privilege bears the burden of establishing that the information or document at issue is an attorney-client communication. *See, e.g. United States v. Jones,* 696 F.2d 1069 (4th Cir. 1982). Here, State Farm has taken contradictory positions, arguing that the letter is not a privileged communication, while simultaneously asserting the privilege and requesting return of the letter. Inasmuch as State Farm's sole motive in arguing against the privileged nature of the letter is to avoid a waiver of the underlying subject matter privilege, the undersigned rejects that position and assumes for the purpose of this Order that State Farm holds its initial position that the letter is a confidential attorney-client communication.

The Supreme Court of Appeals of West Virginia has held that three elements must be present in a communication in order to assert that it is protected from disclosure by the attorney-client privilege. First, both parties to the communication must contemplate that an attorney-client relationship exists. Second, the client must seek advice from the attorney in his capacity as a legal advisor. Third, the communication between the client and the attorney must be intended to be confidential. *State v. Burton*, 254 S.E.2d 129 (W.Va. 1979). Applying this test, the letter certainly supports the assertion of the attorney-client privilege. The letter was written by a representative of State Farm to an attorney for the express purposes of obtaining a legal opinion and to retain the attorney to

represent State Farm in pending litigation. The client supplied the attorney with materials to review, stated the position of the adverse party, and documented a previous conversation in which the assignment was discussed with the attorney. State Farm does not contest that the communication was intended to be confidential; instead, it argues that the letter is not a privileged attorney-client communication, because it does not contain the substance of the attorney's opinions.

Contrary to State Farm's position, the Supreme Court of Appeals has described the attorney-client privilege as "a common law privilege that protects communications between a client and an attorney during consultations," *State ex. rel John Doe v. Troisi*, 459 S.E.2d 139, 146-147 (W.Va. 1995), adding that "[c]communications made in confidence either by an attorney or by a client to one another are protected by the privilege." *State ex. Rel USF&G v. Canady*, 460 S.E.2d 677, 687 (W.Va. 1995). While State Farm is correct that the mere fact that a communication took place between a client and his attorney is not privileged, the substance of the communication is privileged. Simply put, the subject matter of the communication need not include a legal analysis in order for the privilege to attach; a simple recitation of facts by the client to the attorney amounts to a protected communication. To explain this distinction, the Supreme Court of Appeals adopted the "general rule" set forth in 97 C.J.S. § 283, p. 804, stating, "[a] party may refuse on the ground of privilege to state whether he communicated certain facts to his attorney [or vice versa], but the fact that the attorney communicated with his client, and the date of such communication, are not privileged." *State v. Rodoussakis*, 511 S.E.2d 469, 480 (W.Va. 1998). West

Virginia law recognizes that the principal purpose of the attorney-client privilege is to promote "full and frank discourse between attorney and client so as to insure sound legal advice or advocacy;" accordingly, some protected communications between an attorney and client will necessarily involve the routine exchange of information in the absence of legal analysis. *Id.* at 479. Still, the details of the information exchanged remains privileged. Consequently, the Court finds that the substance of the letter, which conveyed certain facts and requested an opinion on a specific legal issue, was a privileged attorney-client communication.

Having established the privileged nature of the letter, the Court next considers whether disclosure of the letter was inadvertent under Fed. R. Civ. P. 502(b). Under this Rule, a disclosure that would otherwise constitute a waiver of the attorney-client privilege will not operate as a waiver if (1) the disclosure was inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure and (3) the holder promptly took reasonable steps to rectify the error, including, for example, requesting a "claw-back" of a disclosed document pursuant to Fed. R. Civ. P. 26(b)(5)(B). In evaluating whether these conditions exist in any given case, Courts have applied multifactorial tests such as the one adopted by the District Court of Maryland in *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251 (D.Md. 2008). In *Victor Stanley*, the Court balanced the following five factors: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the number of inadvertent disclosures; (3) the extent of the disclosures; (4) any delay in measures taken to rectify the disclosures; and (5) overriding interests in justice. *Victor Stanley, Inc., supra* at 259. The reasonableness of the privilege holder in protecting and asserting the privilege is paramount to overcoming the

consequences of an inadvertent waiver.

In the present case, the Court will presume, based upon the representation of State Farm, that the disclosure of the letter was inadvertent. In addition, the Court finds that the number and extent of inadvertent disclosures were minimal. Therefore, State Farm has met two of the five factors needed to qualify as an inadvertent disclosure excepted under FRE 502(b). As to the remaining factors, however, the Court is unable to conclude that State Farm's actions were reasonable. As plaintiffs point out, State Farm provides no insight into the process that it followed in reviewing documents to prevent the inadvertent disclosure of privileged information. State Farm inexplicably omitted the letter from its detailed privilege logs and voluntarily produced the letter to plaintiffs. As such, the Court has no basis upon which to conclude that State Farm acted reasonably to protect the letter from an unintentional disclosure. Moreover, once State Farm became aware at the deposition of Mr. Cazad that the letter was in plaintiffs' possession, State Farm failed to immediately assert the privilege or request return of the letter. Instead, State Farm allowed plaintiffs to identify and attach the letter as an exhibit and question the witness about the letter without objection. It is undisputed that State Farm did not express any interest in protecting the letter until plaintiffs requested additional undisclosed information relating to the subject matter of the letter. Accordingly, the Court finds that State Farm did not act promptly to rectify the inadvertent disclosure. Similarly, the Court finds that the overriding interests of justice do not weigh in State Farm's favor, because the contents of the letter have already been revealed, were made a part of the record, and formed the basis of a portion of defendant Cazad's deposition testimony. For these reasons, the

Court finds that the disclosure of the letter was not sufficiently inadvertent to avoid a waiver of the attorney-client privilege.

The last issue to be considered by the Court is whether the waiver of the attorney-client privilege that attached to the letter results in the broader waiver of the subject matter addressed in the letter. To make this determination, the Court turns to FRE 502(a), which indicates that the scope of a waiver "is limited to what was actually disclosed and does not constitute broader subject-matter waiver, unless (1) the waiver is 'intentional,' in which case the waiver extends to (2) 'the disclosed and undisclosed communications or information concern[ing] the same subject matter,' but only if (3) the undisclosed communications/information 'ought in fairness be considered together' with the disclosed communications/information." *Richardson v. Sexual Assault/Spouse Abuse Resource Center, Inc.*, _ F. Supp.2d_, 2011 WL 442111 *11 (D. Md.) Accordingly to the Advisory Committee's Notes to the Rule:

> The Rule provides that a voluntary disclosure in a federal proceeding or to a federal office or agency, if a waiver, generally results in a waiver only of the communications or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary**. . . .Thus, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner.** (emphasis added).

The intent of Rule 502(a) was to curtail prior waiver doctrine significantly, limiting subject matter waiver to situations in which a litigant discloses protected information to obtain an advantage in the case, and then invokes the privilege to "deny its adversary access to additional materials that could provide an important

understanding of the privileged materials." *Chick-Fil-A v. ExxonMobil Corporation*, 2009 WL 3763032 *5 (S.D.Fla), citing Wright, Miller and Marcus, *Federal Practice and Procedure* § 2016.2 (3rd ed. 2009 Supplement). "There is a clear distinction between intentional disclosure and intentional waiver. . . [b]y requiring a fairness analysis, Congress recognized that '[t]here is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties permitting or prohibiting further disclosures.' *Silverstein v. Federal Bureau of Prisons,* 2009 WL 4949959 *11 (D.Colo.), citing *Eden Isle Marina, Inc. v. United States,* _Fed Cl_, No. 07-127C, 2009 WL 2783031 at *16 (Fed.C. 2009).

The circumstances surrounding State Farm's disclosure of the letter do not suggest an intentional waiver of the attorney-client privilege and certainly do not reflect an orchestrated effort to gain an unfair advantage in the pending litigation. In truth, the contents of the letter do not provide any discernible advantage to State Farm. Moreover, the Court cannot see how allowing plaintiffs access to undisclosed materials pertaining to the subject matter of the letter would provide "an important understanding" of the letter. The letter is not complex, relays minimal information, and is easily understandable on its face. Finally, State Farm makes no request that it be permitted to use or introduce the letter as evidence on its behalf; therefore, this is not a case in which the intended use of the privileged document triggers the need to introduce undisclosed attorney-client communications that "ought in fairness to be considered together." Accordingly, the Court finds that State Farm's disclosure of the letter does not constitute the

introduction of evidence in a selective, misleading or unfair manner, which would justify a broader subject matter waiver.

## V. Conclusion

For the foregoing reasons, the Court **ORDERS** as follows:

1. Plaintiffs' Motion for Determination of Privilege Status of March 2, 2009 Letter Produced by Defendant State Farm Mutual Automobile Insurance Company in Response to Plaintiff's Discovery Requests (Docket No. 101) is **GRANTED,** in part, and **DENIED**, in part. The Court finds that the March 2, 2009 letter is privileged as a confidential attorney-client communication. The Court further finds that State Farm waived the privilege that attached to the letter. Therefore, the letter is no longer protected from use or disclosure in this civil action. However, the Court does **not** find that State Farm waived the attorney–client privilege related to the subject matter addressed in the letter, and, for that reason, plaintiffs' motion for an Order compelling State Farm to supply other undisclosed documents or communications subject to a claim of the attorney-client privilege is denied.

2. Plaintiffs' Motion to Place Document Under Seal (Docket No. 100) is **DENIED** as moot.

**ENTERED:** April 1, 2011.

Cheryl A. Eifert
United States Magistrate Judge