IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JEFFREY A. MARTIN, and JUANITA FLEMING
as Executrix of the Estate of Arch Fleming,
and BARBARA GANDEE, both individually
and on behalf of Others Similarly Situated,

               Plaintiff,

v.                                      CIVIL  ACTION  NO.  3:10-0144

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign corporation;
and SHANNON CAZAD,

               Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendants' Motion for Summary Judgment (ECF 128) and

Plaintiffs' Motion for Class Certification (ECF 130).  The issues have been fully briefed and are ripe

for disposition.  For the following reasons, the motion for summary judgment is **GRANTED in part**

and **DENIED in part** and the motion for class certification is **DENIED**.

### I.

### BACKGROUND

This case, originally filed on December 29, 2009, in the Circuit Court of Mason County,

West Virginia, is a class action suit concerning underinsured motorist ("UIM") coverage.  Plaintiffs

Jeffrey A. Martin, Juanita Fleming, Executrix of the Estate of Arch Fleming, and Barbara Gandee

assert claims against State Farm Mutual Automobile Insurance Company ("State Farm") and one

named State Farm Agent, Shannon Cazad.[1]  Plaintiff Martin, Plaintiff Fleming's decedent, and Plaintiff Gandee were each injured in car accidents, in 2005, 2009, and 2007, respectively, where the damages incurred by each plaintiff  greatly exceeded the liability coverage of the party at fault. At the time of their respective accidents, the named plaintiffs were insured under automobile insurance policies issued by State Farm.  None of the policies carried UIM coverage.  Consequently, State Farm did not provide UIM coverage to any of the plaintiffs following their respective accidents (i.e., State Farm did not cover any portion of the difference between the plaintiffs' actual damages and the at-fault-party's liability coverage limits).

Plaintiffs filed suit, alleging that State Farm unlawfully denied them underinsured motorist coverage.  Under West Virginia law, an automobile insurer has a legal obligation to make a commercially reasonable offer of UIM coverage to each insured.  Plaintiffs contend that State Farm failed to comply with this requirement when issuing policies to each plaintiff.  As a result, Plaintiffs assert that their policies must be reformed to include underinsured motorist coverage up to the limits of the liability insurance provided in their respective policies.  Plaintiffs further claim that, in addition to failing to comply with its legal duty to make a commercially reasonable offer of UIM coverage, State Farm, through its agent Shannon Cazad, acted unlawfully during the claims process. Specifically, Plaintiffs allege that State Farm knew that the selection/rejection forms it used to make an offer of UIM coverage to Plaintiffs were defective and yet it has refused (and continues to refuse)

---

[1] Initially Plaintiffs were Jeffrey Martin and Juanita Fleming, and Defendants also included an additional State Farm Agent, Angela Cooke.  This Court dismissed Ms. Cooke and several of Ms. Fleming's claims in its September 30, 2010 Memorandum Opinion and Order granting, in part, Defendants' Motion to Dismiss.  ECF 33.  Subsequently, Plaintiffs added Ms. Gandee as an additional plaintiff.

to reform the relevant policies and match the available liability and uninsured motorist coverage limits pursuant to *Bias v. Nationwide Mutual Insurance Co.*, 365 S.E.2d 789 (W. Va. 1987).

Plaintiffs' specific claims are as follows.  In Count I, Plaintiffs seek a declaratory judgment providing that, because the forms used by State Farm to offer UIM coverage to its insureds did not comply with West Virginia Code § 33-6-31d, State Farm failed to make commercially reasonable offers to each plaintiff and their policies must be reformed to carry UIM coverage in an amount equal to the respective policy's liability coverage limits.  In Count II, Plaintiffs allege a breach of contract claim, arguing State Farm breached its duty under Plaintiffs' policies when it refused their demands for the payment of UIM coverage, despite its legal obligation to reform the policies and offer such coverage.  In Count III, Plaintiffs allege bad faith, arguing that State Farm's refusal to pay Plaintiff's UIM coverage claims amounts to common-law bad faith as recognized in *Hayseeds v. State Farm Fire and Casualty Co.*, 352 S.E.2d 73 (W. Va. 1986).  In Count IV,[2] Plaintiffs allege multiple violations of the Unfair Trade Practices Act ("UTPA"), W.V. Code § 33-11-4, on the part of State Farm and Cazad.  Finally, in Count V, Plaintiffs seek class certification.

## II.

## LEGAL STANDARD

### A.    Standard for Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Fed. R. Civ. P.* 56(a).  In considering a motion for summary judgment, the Court will not "weigh the evidence

---

[2] In the Amended Complaint, Plaintiffs continue to list Ms. Cooke as an individual defendant. She has been, and continues to be, dismissed from this case.

and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

**B.**     **Standard for Class Certification**

Rule 23 of the Federal Rules of Civil Procedure governs certification of class actions. Rule 23 requires the party to satisfy the requisites of a two-step test to be eligible for class action certification. *United Bhd. of Carpenters & Joiners of Am., Local 899 v. Phoenix Assocs., Inc.*, 152 F.R.D. 518, 521 (S.D. W. Va. 1994). As a first step, the action must satisfy all four requirements of subsection (a), namely (1) numerosity of parties such that joinder of all members is impracticable; (2) questions of legal and factual issues common to the class; (3) typicality of claims and defenses of class representatives; and (4) the class representatives can fairly and adequately protect the interests of the class. *Id.*; Fed. R. Civ. P. 23(a).

If the four requirements of Rule 23(a) have been met, the next step demands that the action fit within at least one of the three categories of actions set forth in subsection (b). The action may

qualify under Rule 23(b)(1), the first of the categories, if individual adjudication of the controversy would prejudice either the party opposing the class or the class members themselves. *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986). The second category, set forth in Rule 23(b)(2), covers suits for classwide injunctive and declaratory relief. *United Bhd. of Carpenters & Joiners of Am., Local 899*, 152 F.R.D. at 521. Rule 23(b)(3), the third category, applies if there are issues of law or fact common to the class that predominate over individual issues and if a class action offers a superior method of fairly and effectively disposing of the controversy. *Id.*

The party seeking certification under Rule 23 bears the burden of proving that its requirements are satisfied. *Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 159 (S.D. W. Va. 1996); *see also Windham v. Am. Brands, Inc.*, 565 F.2d 59, 65 (4th Cir. 1977). Generally, in considering a motion for class certification, the Court does not assess the merits of the underlying claim and looks only to whether the requirements of Rule 23 have been met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974). This analysis must, however, be "rigorous." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Thus, the examination may "entail some overlap with the merits of the plaintiff's underlying claim[,]" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (2011), as the issue of "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Id.* (quoting *Falcon*, 457 U.S. at 157). Nevertheless, the Court is to give Rule 23 a liberal, rather than a restrictive, construction and apply a standard of flexibility that will "best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003).

### III.

### DISCUSSION

A.   **Defendants' Motion for Summary Judgment**

Defendants move for summary judgment on two grounds.  First, Defendants assert that they are entitled to the statutory presumption contained in *W. Va. Code* § 33-6-31d.  Second, if the Court does determine that the State Farm UIM forms are materially different from those provided by the Commissioner, Defendants contend that they are nonetheless entitled to summary judgment with respect to Plaintiffs Martin and Fleming under the common law *Bias* standard.

1.   *Defendants Are Not Entitled to the Statutory Presumption*

Under *West Virginia Code* § 33-6-31(b), every automobile insurance agency

> shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured.

*W. Va. Code* § 33-6-31(b).  To fulfill its obligations under this statute, an insurer must make an effective offer of the optional UIM coverage.  In *Bias v. Nationwide Mutual Insurance Co.*, 365 S.E.2d 789 (1987), the West Virginia Supreme Court of Appeals defined this as an offer "made in a commercially reasonable manner, so as to provide the insured with adequate information to make an intelligent decision.  The offer must state, in definite, intelligible, and specific terms, the nature of the coverage offered, the coverage limits, and the costs involved."  *Bias*, 365 S.E.2d at 791 (citations omitted).  In any litigation challenging an insurance company's offer, "the insurer has the burden of proving that an effective offer [of optional coverage] was made, and that any rejection of said offer by the insured was knowing and informed[.]"  *Id.* at Syl. Pt. 1. If an insurance company failed to meet its evidentiary burden, such optional coverage "is included in the policy by operation

of law when the insurer fails to prove an effective offer and a knowing and intelligent rejection by the insured." *Id.* at Syl. Pt. 2.

Following *Bias*, the West Virginia Legislature enacted West Virginia Code § 33-6-31d. This provision explains, in more detail, the requirements of a "commercially reasonable" offer of UIM coverage. The statute states, in pertinent part:

> Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one of this article shall be made available to the named insured at the time of initial application for liability coverage and upon any request of the named insured on a form prepared and made available by the insurance commissioner. The contents of the form shall be as prescribed by the commission and shall specifically inform the named insured of the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of such coverage available and the number of vehicles which will be subject to the coverage. The form shall be made available for use on or before the effective date of this section. The form shall allow any named insured to waive any or all the coverage offered.

*W. Va. Code* § 33-6-31d(a). If an insurer offers optional UIM coverage on a form described in this section, any election or rejection by an insured pursuant to that form "shall create a presumption that such applicant and all named insureds received an effective offer of the optional coverages . . . and that such applicant exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form." *W. Va. Code* § 33-6-31d(b).

In response to this statutory directive, the West Virginia Insurance Commissioner issued two West Virginia Informational Letters regarding the prescribed form insurers are to use: No. 88 and No. 121. Informational Letter No. 88 was issued in July 1983. *Pls.' Ex. 3*, ECF 147, at 32. It outlined an automobile insurer's obligations under § 33-6-31d and provided the prescribed forms for insurers to use. Informational Letter No. 121 was issued in July 2000, and "replace[d]

Informational Letter No. 88 in its entirety."[3]  *Pls.' Ex. 4*, ECF 147, at 44.  The forms provided with each informational letter are substantially the same, with two sections irrelevant to the instant action removed from the forms issued with Informational Letter No. 121.

Plaintiffs' argument is based on the premise that the duty to comply with the prescribed Insurance Commissioner's forms is an absolute duty—no variations from the forms are allowed. Defendants counter, arguing that so long as State Farm's forms contain all the required information,[4] the fact that the forms also include additional information does not preclude State Farm from qualifying for the statutory presumption.  The Court does not agree with Plaintiffs that any deviation from the Insurance Commissioner's forms automatically disqualifies an insurer from the statutory presumption.  However, it does conclude that the deviations contained in State Farm's forms preclude it from qualifying for the statutory presumption.

Letter No. 121 explains what constitutes compliance with § 33-6-31d, stating:

Statutory compliance in the reproduction of the forms contained herein necessary to create a presumption of an effective offer of optional coverages and a knowing and intelligent election or rejection is achieved so long as the reproduced forms provide ALL the information set forth within the Insurance Commissioner promulgated forms.  It is not necessary that the reproduced forms be exact replicas of the Commissioner forms in size and shape.  However, a minimum 10 point font size and a commonly used font face are required.  Additionally, the portions of the Insurance Commissioner promulgated forms which appear in bold font style must likewise appear in bold on the insurer reproduced forms.

---

[3] The various offers of UIM insurance to Martin and Fleming's decedent occurred both pre- and post-2000.  Accordingly, the language contained in both letters is relevant to the instant case.

[4] There is no dispute that the forms relevant to the specific cases of the named plaintiffs contain all the information required by the statute and the Insurance Commissioner.  Instead, what is being contested is the addition of information to the forms.

*Pls.' Ex. 4*, ECF 147, at 46.  The above language suggests that the forms are a compliance "floor", and that an insurer's inclusion of additional information on the forms may yet comply with the requirements of § 33-6-31d.  However, a closer review of the Informational Letters reveals that the Insurance Commissioner provided only a limited flexibility in the forms, thereby constricting what additional information is allowed—that is, so long as insurers hope to be entitled to the statutory presumption.

Both letters state that "[t]he blank spaces near the bottom of the per person, per accident, and property damage columns are provided to allow the insurer *some flexibility* in completing the form." *See, e.g.*, *Pls.' Ex. 4*, ECF 147 at 47.  This language indicates that while strict compliance with the form is not required, the Insurance Commissioner did not leave much room for variation outside of differences in formatting and the empty spaces provided on the form.  This conclusion is supported by the frequently asked questions section contained in Letter No. 88.[5]  The first question asks whether insurers can break the coverage premiums down, rather than providing the premium as an aggregate of the bodily injury per person, bodily injury per accident, and property damage coverages.  The Insurance Commissioner responded in the negative, stating that "[t]he form is designed with simplicity in mind and it was felt that breaking the coverages down any further would make the form too crowded and complicated."  *Pls.' Ex. 3*, ECF 147, at 35.

The forms utilized by State Farm do not achieve this goal of simplicity.  A comparison of the Insurance Commissioner's forms and the forms utilized by State Farm for Plaintiffs Martin and Fleming illustrates.  The Insurance Commissioner forms contain five columns.  The first three list

---

[5] The Court recognizes that Letter No. 121 has replaced No. 88.  Nonetheless, the Court finds the information contained in No. 88 informative in ascertaining whether alterations to the prescribed form nonetheless qualify for the statutory presumption.

the optional coverage limits for bodily injury per person, bodily injury per accident, and property damage. The fourth column is blank, allowing the insurer to list the aggregate premium for each level of coverage. The fifth column is where the insured either rejects the optional coverage or marks the level of optional coverage he or she selects. In contrast, State Farm's forms contain six or eight columns. The first three columns are the same as the Insurance Commissioners' forms. However, in direct contradiction with the goal of simplicity prescribed by the Insurance Commissioner, State Farm's forms contain two or four columns, listing premiums per coverage level. Thus, rather than having one premium for each level of coverage like the Insurance Commissioner forms, State Farm's forms instead list either two or four different premiums that are dependent on whether the insured qualifies for a multi-vehicle discount, and/or whether the insured has collision insurance. Thus, any insured marking "select" next to a coverage level has no idea, based on the face of the UIM form, which premium he or she will be paying. Instead, the insured must refer to external information contained elsewhere in the policy in order to ascertain exactly which premium is applicable to him or her.

The additional information contained in State Farm's forms clearly "make the form too crowded and complicated." Defendant State Farm nonetheless urged the Court, during oral argument, to conclude that State Farm's policy of face-to-face meetings between the insured and a State Farm agent overcomes the confusion created by the multiple premiums included on each form. The Court disagrees. Even clarifying discussions with an agent do not render a form compliant to entitle the insurer to the benefit of the statutory presumption—the presumption is expressly tied to the sufficiency of the form. The history of *Bias* and the later clarification provided by § 33-6-31d and the Informational Letters establish that the primary goal of the Insurance Commissioner's forms

is to simplify and clarify the offering of the optional insurance coverage. *Bias* created the standard of a "commercially reasonable offer" and the forms are the statutorily mandated manifestation of what constitutes a "commercially reasonable offer." Thus, relying on the external information provided during a face-to-face insured-agent meeting does not bring the State Farm forms within the statutory presumption. Accordingly, the Court **FINDS** that State Farm is not entitled to the statutory presumption.

> **2.     *Without the Statutory Presumption, Common Law and* Bias *Control***

Plaintiffs vociferously argue that § 33-6-31d superseded *Bias* and the common law that, prior to the statute's enactment, governed what actions by an insurer complied with the requirements of § 33-6-31(b). To support this contention, Plaintiffs point to the mandatory nature of the directives contained in § 33-6-31d. Plaintiffs also place heavy emphasis on four cases, *Westfield v . Bell*, 507 S.E.2d 406 (W. Va. 1998) (per curiam), *Ammons v. Transportation Insurance Co.*, 219 F. Supp. 2d 885 (S.D. Ohio 2002), *Burrows v. Nationwide Insurance Co.*, 600 S.E.2d 565 (W. Va. 2004), and *Luikart v. Valley Brook Concrete & Supply, Inc.*, 613 S.E.2d 896 (W. Va. 2005).

First, the Court notes that the West Virginia Legislature, unlike in numerous other instances, did not clearly express an intent to displace the governing common law. Defendants point to *W. Va. Code* § 33-6-30 as an example. There, the Legislature stated that the provision was "specifically intended to clarify the law and correct [the] . . . misapplication" of the law in a West Virginia Supreme Court of Appeals holding. There is no similar intent expressed with respect to § 33-6-31d and its interaction with *Bias*.

Second, while the Court agrees that this statute mandates the use of the Insurance Commissioner's forms to make offers of the optional UIM coverage, the effect of these mandatory directives is tempered by the following language contained in the statute:

> The contents of a form described in this section which has been signed by an applicant *shall create a presumption* that such applicant and all named insureds received an effective offer of the optional coverages described in this section and that such applicant exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form.

*W. Va. Code* § 33-6-31d(b) & (c) (emphasis added).        If an insurer complies with every aspect of the Informational Letters, it is still entitled to no more than a presumption that it has complied with the requirements laid out in *Bias*. A presumption is "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts." *Black's Law Dictionary* (9th ed. 2009). The creation of the presumption is only given meaning when examined within the context of *Bias*. There, the West Virginia Supreme Court of Appeals concluded that the insurer bears the evidentiary burden of proving that an effective offer of the optional insurance was made. *Bias*, 365 S.E.2d 789 at Syl. Pt. 1. Without the imposition of the evidentiary burden in *Bias*, the need for the statutory presumption created by § 33-6-31d would be nonexistent. Further, *Bias* is still relied on by both West Virginia courts and the federal courts in interpreting and applying § 33-6-31d. For example, in *Burrows*, the West Virginia Supreme Court stated that "[t]he statute and our decision in *Bias v. Nationwide Mut. Ins. Co.* [ ] encourage insurance companies to make a real effort to inform customers about the opportunity for underinsured motorist coverage." *Burrows*, 600 S.E.2d at 571. *Bias* did not become obsolete when the West Virginia legislature passed § 33-6-31d. It is still a guidepost for determining what is necessary to provide a "commercially reasonable" offer pursuant to § 33-6-31(b). And it is what guides courts in analyzing

-12-

the facts of a specific offer of the optional coverage when an insurer is not entitled to the statutory presumption.

Moreover, the cases cited by Plaintiffs are distinguishable.  Plaintiffs argue that in *Bell*, the West Virginia Supreme Court of Appeals clearly held that an insurer is required to use the exact forms promulgated by the Insurance Commissioner.  The Court disagrees with this interpretation. The form at issue in *Bell* had been issued to the insured in between the date of passage of § 33-6-31d and the promulgation and adoption of Informational Letter No. 88 and the Commissioner's form. *Bell*, 507 S.E.2d at 410.  Accordingly, the court's review was limited to the circumstances in front of it—the period before the form had been created by the Insurance Commissioner and the narrow certified questions presented.  Any statement or conclusion referencing *Bias*' interaction with § 33-6-31d  is therefore merely dicta.  Furthermore, its one statement with respect to an insurer's obligations after the promulgation of the Insurance Commissioner's forms states that the insurer must comply with the statute and the Insurance Commissioner's *guidelines*, rather than requiring an exact replication of the Insurance Commissioner form.  *Id.*  In addition, the case in *Bell* also involved offers made to the insured *after* Informational Letter No. 88 went into effect.  These forms did not strictly comply with the statute or the Insurance Commissioner's forms as they failed to offer coverage up to the limits required by § 33-6-31(b).  Yet, the Court nonetheless—*in dicta*—indicated that it was considered a commercially reasonable offer and that the insured's rejection was valid. *Id.* at 410 n.5.  Considering the varying inferences that can be read into the *Bell* decision, the Court cannot conclude that it stands for what Plaintiffs argue.

Next, Plaintiffs point the Court to *Ammons*, a case decided by the Southern District of Ohio. Plaintiffs assert that in *Ammons*, the court concluded that the West Virginia Supreme Court of

-13-

Appeals has held that an insurer must comply with § 33-6-31d and the Insurance Commissioner's guidelines. *Ammons*, 219 F. Supp. 2d at 894. Plaintiffs also point to *Burrows* and *Luikart*, as in each case the West Virginia Supreme Court of Appeals cited *Ammons* with approval. These cites provide minimal support for Plaintiffs' reliance on *Ammons*. In a footnote in *Burrows*, the court quotes from *Ammons* to describe the Insurance Commissioner form; the court makes no reference to the *Ammons* court's conclusion as to the effect of the statute on *Bias*. *Burrows*, 600 S.E.2d at 570 n.10. Similarly, in a footnote in *Luikart*, the court refers to the *Ammons* case, citing its recognition of the supersession of *Bias* by § 33-6-31d. *Luikart*, 613 S.E.2d at 903 n.11. However, the *Ammons*'s court limited the superseding effect of the statute to "the portion of *Bias* that sets forth the information that must be contained in an offer of optional coverage for it be effective [as it is] superceded by the requirements set forth in § 33-6-31d."[6] *Ammons*, 219 F. Supp. 2d at 894 (citing *Foutty v. Porterfield*, 450 S.E.2d 802, 804 n.5 (W. Va. 1994)). *Foutty* discussed the limited nature of the statute's effect on *Bias*, noting in a footnote five that it merely "altered the *Bias* case by setting out in detail how an offer . . . should be made." Moreover, *Ammons* explicitly recognizes that insurers have to comply with the guidelines of *Bias*, § 33-6-31d, and the Insurance Commissioner's Informational Letters. *Id.* at 893. Further, the court's conclusion that the insurer failed to comply with the West Virginia requirements was based on the insurer's, Allstate's, failure to "set forth a premium breakdown showing the cost of each optional coverage limit." *Id.* at 895.

---

[6] This Court in *Webb v. Shafer*, 694 F. Supp. 2d 497 (S.D. W. Va. 2010) compared the required content for an "effective offer" as outlined in *Bias* to that mandated in § 33-6-31d. The Court concluded directives contained in the statute and in the Insurance Commissioner's Informational Letters are "consistent with *Bias* and the subsequent, related case law. This is because . . . the Letter [and statute] do[] not alter the underlying qualitative standard by which an offer of underinsured motorist coverage must be judged." *Webb*, 694 F. Supp. 2d at 503–04.

Thus, unlike in the instant case, Allstate's forms did not include all the required information.  In contrast, here, State Farm's forms do include all the required information; they just include *additional* information as well.

Against this backdrop of very narrow descriptions, in dicta, of the effect of the statute on *Bias*, Plaintiffs advocate a result that defies logic: compliance with the statute creates merely a presumption while noncompliance is deemed to impose coverage.  Thus, the authorities cited by Plaintiffs do not convince the Court that the statute has superseded the previously controlling common law.  Rather, the Court concludes that the statute and the Insurance Commissioner Informational Letters were promulgated in order to clarify the standard first established in *Bias*. This Court has previously held that when the statutory presumption does not apply, *Bias* and its progeny control.  *Webb v. Shaffer*, 694 F. Supp. 2d 497 (S.D. W. Va. 2010).  Plaintiffs have provided no reason for the Court to alter its decision.

### 3.      *State Farm Made Commercially Reasonable Offers to Plaintiffs Fleming & Martin*

The remaining issue with respect to Defendant's motion for summary judgment is whether or not Defendant State Farm made a commercially reasonable offer to the individual plaintiffs. Defendant only moves for summary judgment with respect to Plaintiffs Martin and Fleming, as there is an issue of disputed material fact with respect to Plaintiff Gandee.

Reviewing the facts before it, the Court concludes that State Farm did make a commercially reasonable offer to Plaintiffs Martin and Fleming.  In *Bias*, the West Virginia Supreme Court of Appeals stated that in order for an insurer to meet its evidentiary burden of proving that an effective offer was made, the insurer must establish several key facts.  First, "that any rejection of said offer by the insured was knowing and informed."  *Bias*, 365 S.E.2d 789 at Syl. Pt. 1.  Second, that the

-15-

offer included specified information.  *Id.* at 791.  The required content was expanded upon in § 33-6-31d, and now, for an offer to be "commercially reasonable", an insurer must include the following information in its offer: "the coverage offered and the rate calculation therefor, including, but not limited to, all levels and amounts of coverage available and the number of vehicles which will be subject to the coverage."  *W. Va. Code* § 33-6-31d(a); *see also Pls.' Ex. 3*, ECF 147 at 33–34; *Pls.' Ex. 4*, ECF 147 at 45–46.  There is no dispute that Defendant State Farm provided the mandatory information to both Plaintiffs Martin and Fleming's decedent.  Instead, Plaintiffs focus on several inaccuracies contained on each form, arguing that they prevented a knowing and intelligent rejection by Martin and Fleming's decedent.

Fleming's decedent, Arch Fleming, purchased automobile insurance from State Farm in 1996.  At that time, he opted to purchase UIM coverage, with limits of $100,000 per person, $300,000 per accident, and $10,000 for property damage ("$100/300/10").  *Defs.' Ex. 1*, ECF 128-1 at 1.  Subsequently, in 2003, Mr. Fleming, during an in person meeting with a State Farm agent, elected to remove his UIM coverage by signing State Farm's UIM offer form rejecting UIM coverage.  *Defs.' Ex. 3*, ECF 128-1 at 9.  At such meetings  in person, it was the standard practice of the agent, Daniel McPherson, and his staff to explain the optional coverage and to recommend purchasing coverage with limits of $100/300/10.  Mr. McPherson stated that during the 2003 meeting, Mr. Fleming "express[ed] his desire to remove the [UIM] coverage from his policy because he wished to reduce his premium."  *Defs.' Ex. 2* at ¶ 10, ECF 128-1 at 4.

The facts with respect to Plaintiff Martin's UIM coverage are similar.  Martin initially purchased automobile insurance in October 1997.  This insurance was purchased following an in person meeting with a State Farm agent, Charles Romine, during which Mr. Romine explained UIM

-16-

coverage, the available limits and their associated premiums, and the Important Notice required under § 33-6-31d.  *Defs.' Ex. 4* ¶¶ 5, 9–10, ECF 128-1 at 11, 12.  Martin elected to purchase UIM coverage with limits of $100/300/10.  *Id.* ¶ 11; *Defs.' Ex. 5*, ECF 128-1 at 16.  Like Fleming's decedent, Martin subsequently rejected the UIM coverage.  In another face-to-face meeting with Agent Romine a mere six months later in April 1998, Martin signed a UIM offer form in which he rejected the coverage.  *Defs.' Ex. 6*, ECF 128-1 at 17.

Plaintiffs various arguments as to why the offers were not commercially reasonable fail to convince the Court.  Plaintiffs argue that the forms provided to Martin and Fleming's decedent were deficient, and therefore the rejections were not knowing and intelligent.  First, with respect to Martin, at the top of the April 1998 forms, State Farm failed to indicate whether the rates included or did not include a multi-car discount.  *Id.*  The form at issue had two columns listing alternate premiums, depending on whether a multi-car discount applied or not.  Thus, Plaintiffs argue, the form was too confusing for Martin to be able to make an informed decision.  This Court has previously found this to be insufficient grounds to conclude that offer was deficient.  *Ingles v. State Farm Mut. Auto. Ins. Co.*, 265 F. Supp. 2d 655, 659 (S.D. W. Va. 2003).  It concludes so again.

Second, again with respect to Martin, Plaintiffs argue that the inclusion in the April 1998 form of Martin's then-current level of UIM coverage ($100/300/10) was overly confusing, thereby preventing a knowing and intelligent rejection of UIM coverage.  Martin stated in his affidavit that the inclusion of this information on the selection/rejection form led him to believe that he would maintain this coverage unless he opted for a different insurance level on the form.  *Pls.' Ex. 34* at ¶ 2, ECF 148-3 at 17.  Therefore, he selected nothing during the April 1998 meeting and, further,

he denies making the mark on the offer form indicating his rejection of all UIM coverage. *Id.* at ¶ 3; *Pls.' Ex. 10* at 21–22, ECF 148 at 38–39

However, Mr. Martin signed the UIM offer form, which contained the following attestation language above the signature block: "I have been given the opportunity to select or reject limits of UNDERinsured motor vehicle coverage listed above and have selected the coverage that matches the box I have checked." *See, e.g.*, *Defs.' Ex. 6*, ECF 128-1 at 17. This language significantly undermines Martin's contention that he believed he was maintaining his prior coverage of $100/300/10, as well as his assertion that he did not make the mark indicating rejection. Martin does not challenge the validity of his signature; thus, the Court concludes that he was being truthful when he signed the form.[7] In addition, the form on which he selected "reject" listed as a possible coverage level his then-present coverage of $100/300/10, with the same premium he was then paying. The Court cannot accept the proposition that Martin, reviewing the language of the attestation clause and seeing that his previously selected coverage level was listed as a possible selection on the April 1998 UIM offer form, believed that he could select nothing and still maintain his prior coverage level. He is bound by his attestation.

The Court has reached this conclusion before. In *Webb*, the plaintiff likewise provided an affidavit asserting that he believed he had purchased UIM coverage. The Court concluded:

> this affidavit is not sufficient to create a triable issue. First and foremost, all of the forms submitted by the parties and represented to be the underinsured motorist offer form presented to [plaintiff] are signed and the box labeled "Reject" is checked.

---

[7] The case of Martin differs greatly from that of Plaintiff Gandee. There, the dispute is over whether the signature was itself legitimate. Thus, the validity of the form as a whole is in question. Here, in contrast, Martin recognizes the validity of his signature, and therefore the attestations above the signature block are accepted as true by this Court.

-18-

> Viewed alone, these forms present substantial, concrete evidence that [plaintiff] knowingly and intelligently rejected such coverage at that time.

*Webb*, 694 F. Supp. 2d at 505.  Further, as in this case, the plaintiff in *Webb* had elected, and later rejected, UIM coverage.  This Court found this to be a compelling argument in *Webb* that the rejection was knowing and intelligent, and it concludes the same here.  *Id.*

Plaintiffs also argue that neither Martin nor Fleming's decedent received the mandatory Important Notice.  Plaintiffs assert that because State Farm only "strongly recommended" that its agents include the Important Notice, and because State Farm does not maintain copies of the Important Notice in the insureds' files, there is no proof that State Farm did, in fact, provide these notices.  Moreover, Martin attested that he does not remember receiving the Important Notice.  *Pls.' Ex. 34* at ¶ 3, ECF 148-3 at 17.  This argument has no merit.  Both individuals signed forms that stated, immediately above their signatures: "I have read the IMPORTANT NOTICE attached, on UNDERinsured motor vehicle coverage and understand how this coverage works."  *See, e.g.*, *Defs.' Ex. 6*, ECF 128-1 at 17.  In addition, Martin's State Farm agent attested that the standard practice of his office was to provide  the Important Notice.  *Defs.' Ex. 4* ¶¶ 9–10, ECF 128-1 at 12.

With respect to Fleming's decedent, Plaintiffs assert that the affidavit submitted by his agent is barred as hearsay and under *W. Va. Code* § 57-3-1, the "Dead Man's Act."  As to the first argument, the agent's affidavit recalling the agent's conversation with Mr. Fleming in 2003 is admissible as a party admission.  *Fed. R. Evid.* 801(d)(2).  As to the second, the West Virginia Supreme Court of Appeals dispensed with that argument in *Cross v. State Farm Mutual Automobile Insurance Co.*, 387 S.E.2d 556, 563 (W. Va. 1989) (holding that the Dead Man's Statute "does not bar the testimony of an insurer's agents that they orally informed the decedent of various levels of

-19-

uninsured motorist coverage, where the only assertion is that the insurer's agents are incompetent witnesses by virtue of their interests as agents").

In light of the signed affidavits by State Farm agents stating that the UIM optional coverage was explained to both Martin and Fleming's decedent, and the fact that both men had previously elected to purchase such coverage, only to later reject it, the Court concludes that their rejection of the UIM coverage was knowing and intelligent.  Therefore, Defendants are **GRANTED** summary judgment with respect to Plaintiffs Martin and Fleming.

**B.**     **Plaintiffs' Motion for Class Certification**

While Plaintiffs' Motion for Class Certification is mooted by the dismissal of two of Plaintiffs' named plaintiffs, the Court nonetheless addresses the impact of its foregoing conclusions on the viability of class certification with respect to this action.  By finding that *Bias* controls where the statutory presumption does not apply, the Court is now confronted with a proposed class of State Farm insureds, the resolution of whose cases require individual fact-finding under the *Bias* standard. The United States Supreme Court in the recent case *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), stated that commonality requires that a class's "claims must depend upon a common contention . . . of such a nature that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551.  Here, the varying claims presented by the proposed class will require an intensive, individual fact-finding, as demonstrated by the Court's discussion of Martin's and Fleming's decedent's claims.   Accordingly, the class proposed by Plaintiffs fails to meet the commonality requirement under Rule 23(a) of the *Federal Rules of Civil Procedure*.  The Court therefore **DENIES** Plaintiffs' motion for class certification.

-20-

**IV.**

**CONCLUSION**

For the foregoing reasons, Defendants' motion is **GRANTED in part** and Plaintiffs' motion is **DENIED**.  The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.


ENTER:        August 22, 2011


ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE