IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JEFFREY A. MARTIN; JUANITA
FLEMING, as Executrix of the
Estate of Arch Fleming; and
BARBARA GANDEE, both
individually and on behalf of
others similarly situated,

        Plaintiffs,

v.                                        Case No.:  3:10-cv-0144

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, a foreign
Corporation; and SHANNON CAZAD,

        Defendants.

### ORDER

Pending before the Court is Plaintiff Barbara Gandee's Motion to Compel Defendant State Farm Mutual Automobile Company to More Fully Respond to Plaintiff's Third Set of Interrogatories and Requests for Production (Docket No. 189). Defendant has responded to the Motion (Docket No. 191), and Plaintiff has filed a reply memorandum (Docket No. 192). Therefore, the matter has been fully briefed and is ready for resolution. Having considered the arguments of counsel, the Court **GRANTS, in part,** and **DENIES, in part,** Plaintiff's Motion to Compel as follows:

### Interrogatory No. 1

Defendant argues that this interrogatory is overly broad and seeks information that is irrelevant, while Plaintiff counters that the interrogatory is highly germane to the

- 1 -

core issues of bad faith and punitive damages. To a degree, the Court agrees with both parties. The manner in which Defendant responded to prior requests that it "roll up" underinsured motorist ("UIM") coverage under circumstances similar to those alleged by Plaintiff may certainly lead to relevant and admissible evidence on, at a minimum, the issues of common law bad faith and punitive damages. However, a request for **every claim** resulting in a policy reformation involving UIM coverage, regardless of the reason, is overly broad and likely to elicit information that is more irrelevant than relevant to the instant case. Accordingly, Defendant is **ORDERED** to identify every claim made to Defendant in the State of West Virginia between January 1, 2000 and December 31, 2010 in which a State Farm insured has contended that (1) State Farm's UIM selection/rejection form was defective or deficient; (2) that he/she did not complete and/or sign a UIM selection/rejection form; or (3) that his/her signature was forged on the UIM selection/rejection form **and** in which State Farm has "rolled-up" or reformed that insured's UIM coverage limits to an amount equal to the insured's liability limits. For each such instance, Defendant shall provide Plaintiff with the full name and last known address of the involved insured. This information shall be supplied within thirty (30) days after entry of this Order.

### Interrogatory Nos. 5 and 6

In these interrogatories, Plaintiff seeks to discover information relating to State Farm insureds, who were customers of a particular West Virginia agent, James D. Stotts, and have denied completing or signing a UIM selection/rejection form or have alleged that the signature on such a form purporting to be the insured's was not, in fact, the insured's signature. Plaintiff further seeks information on whether State Farm asked those particular insureds to sign new UIM selection/rejection forms after their policies

were reassigned to an agent other than Mr. Stotts. Defendant argues that these requests are unduly burdensome; particularly, as they require Defendant to conduct a manual review of the agent's files. In addition, Defendant asserts that its insureds are required to sign new UIM selection/rejection forms at the time of application for a new policy, when there is a change in coverage limits, and at the request of the insured; accordingly, a request for information regarding the signing of new UIM selection/rejection forms is overly broad. Finally, Defendant argues that its policyholders have a right of privacy in their transactions with Defendant and have not agreed to the disclosure of their identities and contact information.

Information pertaining to other customers of Mr. Stotts who have claimed forgery or inadequate management of UIM selection/rejection forms may certainly lead to relevant and admissible evidence. Accordingly, Plaintiff is entitled to discover the requested information. As such, to resist the discovery request on the grounds of burdensomeness or breadth, Defendant must submit evidence supporting its claims that the discovery is unduly burdensome, oppressive, or improperly invasive. Defendant must do more to carry its burden than make conclusory and unsubstantiated arguments. *Convertino v. United States Department of Justice,* 565 F. Supp.2d 10, 14 (D.D.C. 2008) (the court will only consider an unduly burdensome objection when the objecting party demonstrates how discovery is overly broad, burdensome, and oppressive by submitting affidavits or other evidence revealing the nature of the burden); *Cory v. Aztec Steel Building, Inc.,* 225 F.R.D. 667, 672 (D. Kan. 2005) (the party opposing discovery on the ground of burdensomeness must submit detailed facts regarding the anticipated time and expense involved in responding to the discovery which justifies the objection). Although there may be merit to Defendant's objections, the Court is not in a position to

fully evaluate them because Defendant has failed to provide the requisite information. Defendant claims that a manual search of the agent's files is overly burdensome, but submits no details about the estimated time and expense of such a search. Likewise, Defendant asserts the privacy interests of its policyholders, but offers no supporting legal precedent to establish that the policyholders have a right or expectation of privacy in their basic automobile insurance information. Moreover, Defendant has not made a motion for a protective order to address these alleged privacy concerns. Finally, a protective order is already in place in this case, which can be used to limit disclosure of the policyholders' information.

Accordingly, the Court **ORDERS** Defendant to supply Plaintiff with the full name and address of any customer of agent James D. Stotts who, between January 1, 2000 and the date of Mr. Stotts' retirement, made a claim to State Farm, or of which State Farm is aware, alleging that Mr. Stotts did not require that customer to complete or sign a UIM selection/rejection form or that the customer's signature on any such form was not, in fact, the customer's signature. Defendant shall also identify any such customer who was asked to execute a new UIM form as a result of Mr. Stotts' action or inaction, stating the precise reason the customer was asked to sign a new form. This information shall be supplied within thirty (30) days after entry of this Order.

### Interrogatory No. 12

In this request, Plaintiff seeks information regarding letters of merit issued by the Insurance Commissioner in third-party administrative procedures brought against Defendant under the West Virginia Unfair Trade Practices Act ("Act"). Plaintiff argues that she may establish the "general business practice" element of her complaint by producing letters of merit supporting other claims alleging infractions of the Act by

Defendant. According to Plaintiff, evidence obtained in other cases establishing that Defendant violated various sub-paragraphs of the Act may be considered cumulatively as proof of a general business pattern of unfair claim settlement practices. To the contrary, Defendant argues that a "general business practice," when proven through evidence of other claims, must be based upon multiple violations of the same prohibited conduct and not upon the sheer number of unrelated violations. Neither party offers any recent legal precedent in support of its position.[1] Fortunately, the Court need not analyze the type of evidence that must be supplied to prove a general business practice, because here, Plaintiff asks for the production of letters of merit rather than documents that prove a violation of the Act by Defendant. Plaintiff concedes that "the mere issuance of a letter of merit does not prove a violation of the [Act]," (Docket No. 192 at 8); instead, a letter of merit is merely an intermediate step in the administrative process of determining whether a violation has occurred. Consequently, a letter of merit is not proof that can be used to demonstrate the "frequency" element necessary to establish the existence of a general business practice. Thus, the Court agrees with Defendant that Plaintiff's interrogatory is overly broad. In addition, the request is unduly burdensome on its face when bearing in mind the limited usefulness of the requested information. As such, the Court declines to compel a response to this interrogatory.

---

[1] Plaintiff cites to *Jenkins v. J.C. Penney Cas. Ins. Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981) for the proposition that a history of frequent violations of different sub-paragraphs of W.Va. Code § 33-11-4(9) proves a general business practice of disregarding the proscriptions of the Act, while Defendant cites *Dodrill v. Nationwide Mut. Ins. Co.* 201 W.Va. 1, 491 S.E.2d (1996) for the countervailing position that when proving a general business practice through the use of other claims, the alleged statutory violation in those claims must be the same as the violation at issue in the pending case. Both of these decision predate the amendments to the Act that created the administrative process for third-party claims, and neither party has supplied any case law that addresses how proof of a general business practice in first-party claims under the Act has been affected, if at all, by the language contained of *West Virginia Code § 33-11-4a(f),* which provides "a general business practice may only be based on the existence of substantially similar violations in a number of separate claims or causes of action."

### Request for Production No. 13

To the extent that Defendant has any other documents responsive to this request for production, Defendant is **ORDERED** to produce them within thirty (30) days of the entry of this Order.

The Clerk is instructed to provide a copy of this Order to all counsel of record.

**ENTERED:** March 29, 2012.

Cheryl A. Eifert
United States Magistrate Judge